# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>ELDER HERNANDEZ<br><br>*Defendant(s)* | )<br>)<br>)  Case No. 3:23-mj-71785 MAG<br>)<br>)<br>)<br>) |

FILED
Nov 29 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **August 11, 2023** in the county of **San Francisco** in the **Nothern** District of **California**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| - 21 U.S.C.§§ 841(a)(1), (b)(1)(C) | - Possession of Controlled Substance with Intent to Distribute |
| - 18 U.S.C. § 2 | - Aiding and abetting |

This criminal complaint is based on these facts:

Please see the attached affidavit of SFPD Sergeant Domenico Discenza

☑ Continued on the attached sheet.

/s/ Domenico Discenza
*Complainant's signature*

SFPD Sergeant Domenico Discenza
*Printed name and title*

Approved as to form /s/ David J. Ward
AUSA David J. Ward

Sworn to before me and signed in my presence.

Date: 11/29/2023

*Judge's signature*

City and state: San Francisco, CA

Hon. Sallie Kim, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Domenico Discenza, a San Francisco Police Department Sergeant, having been duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging ELDER HERNANDEZ with possession with intent to distribute fentanyl (N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propanamide), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting), occurring on or about August 11, 2023, in San Francisco, California, in the Northern District of California.

### SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

### AFFIANT BACKGROUND

4. I am a Sergeant at the San Francisco Police Department ("SFPD") and have

worked as a sworn officer for the SFPD for approximately 25 years. I am a sworn Task Force Officer for the Drug Enforcement Administration. I have been assigned as a Sergeant at the SFPD Narcotics Unit since March 2023, and prior to that was a Sergeant at the Strategic Investigations/Homicide Detail for approximately nine years. I am a sworn Task Force Officer for the Drug Enforcement Administration. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5. In the police academy and at SFPD Detective School I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received hundreds of hours of continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations.

6. During my employment at SFPD, I have participated in many controlled substance investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants and arrest warrants related to various crimes against persons investigations.

7. Based on my training and experience, as well as conversations I have had with drug dealers, informants, and experienced law enforcement officers, I have become familiar with

the practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8. I have also had discussions with other law enforcement officers and confidential informants about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and methamphetamine and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, methamphetamine, fentanyl, and other controlled substances.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11. On October 3, 2023, HERNANDEZ was arrested by SFPD officers in the Van Ness BART Station, in San Francisco, California, in the Northern District of California. Based

on the facts described below, I have probable cause to believe that HERNANDEZ violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C) based on his possession with intent to distribute fentanyl.

12. On October 3, 2023, law enforcement personnel from the San Francisco Police Department's Narcotics Division conducted a "buy-bust" operation on the southwest corner of Market Street and 11th Street in San Francisco.

13. At approximately 2155 hours on October 3, 2023, an SFPD Officer operating in an undercover capacity approached the southeast corner of Market Street and 11th Street in San Francisco. The officer made eye contact with HERNANDEZ, and then asked HERNANDEZ for "thirty," which I understand was a request to purchase $30 of fentanyl.

14. HERNANDEZ then handed the officer a small baggie containing an off-white glassine substance which later was determined to be fentanyl, in exchange for $30 of marked city funds from the undercover officer.

15. The officer then gave a pre-arranged buy signal, alerting other officers that he had purchased suspected narcotics. Another SFPD officer then broadcast HERNANDEZ's description over the police radio. Uniformed officers then approached HERNANDEZ, who attempted to flee by running down the stairs into the Van Ness BART Station.

16. Law enforcement pursued and then arrested HERNANDEZ without incident, and he was searched incident to arrest. Law enforcement recovered the following evidence from HERNANDEZ's left jacket pocket:

- Suspected Fentanyl, approximately 15.4 grams gross
- Suspected Methamphetamine, approximately 15.2 grams gross
- Suspected Cocaine Base, approximately 4.1 grams gross

Law enforcement personnel also seized the following items from the floor of the Van Ness BART Station next to where HERNANDEZ was apprehended:

- Suspected Fentanyl, approximately 10.1 grams gross
- Suspected Methamphetamine, approximately 50.2 grams gross.

17. Inside HERNANDEZ's left pants pocket, officers recovered the $30 of marked city funds, along with $271 of U.S. Currency comprised of 10 $20 bills, six $10 bills, two $5 bills, and one $1 bill.

18. The suspected fentanyl seized from HERNANDEZ and the BART Station floor tested presumptive positive for fentanyl utilizing a TruNarc testing device. The suspected Methamphetamine seized from HERNANDEZ and the BART Station floor tested presumptive positive for Methamphetamine utilizing a TruNarc testing device. The suspected cocaine base seized from HERNANDEZ also later tested presumptive positive for cocaine base utilizing a TruNarc testing device.

19. A criminal records check confirmed the following: HERNANDEZ has previously been arrested at least twice, both related to controlled substances distribution: On March 13, 2023 HERNANDEZ was arrested for "Possession for Sale of a Controlled Substance" (Health and Safety Code § 11351) in San Francisco and on April 22, 2023, HERNANDEZ was arrested for "Possession of a Controlled Substance for Sale" (Health and Safety Code § 11351).

20. Based on my training and experience, the amounts and varieties of controlled substances that HERNANDEZ had in his possession when arrested on October 3, 2023 were consistent with amounts possessed for distribution, as opposed to mere personal use. The cash in small bills were also indicia related to the sales of controlled substances. The location of the arrest in San Francisco's Tenderloin District, an area known for a high volume of drug sales activity, further supports this conclusion.

//

//

//

## CONCLUSION

21. Based on my training and experience, and the facts and circumstances set forth above, I believe probable cause exists to believe that on October 3, 2023, in the Northern District of California, HERNANDEZ possessed with the intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 (aiding and abetting). Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

*/s/ Domenico Discenza*
_____
DOMENICO DISCENZA
Sergeant
San Francisco Police Department

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on November 29, 2023. This complaint and warrant are to be filed under seal.

_____
HONORABLE SALLIE KIM
United States Magistrate Judge